# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

United States of America,

    Plaintiff,                                              Case No. 1:17cr053

       v.                                              Judge Michael R. Barrett

Evans Landscaping, Inc., *et al*.,

    Defendants.

## Memorandum Opinion on Loss Calculation
## for Purposes of Presentence Investigation Report

In this case, the Court determined it would be appropriate for the parties to submit their arguments on loss calculation under the U.S. Sentencing Guidelines ("Guidelines") prior to the completion of the Presentence Investigation ("PSI") Report. Therefore, rather dealing with post-report objections, the Court intends to provide guidance to the author of the PSI, prior to the completion of the report, regarding the legal parameters for proper loss calculation under the Guidelines. The Government's argument is contained in their letter to the United States Probation Officers dated January 14, 2019 and Memorandum of Law Regarding Calculation of Loss under U.S.S.G. § 2B1.1. (Doc. 173). Defendant Jim Bailey filed a Memorandum on Loss Amount (Doc. 174); and Defendants Doug Evans, Evans Landscaping, Inc. filed a Submission on the Issue of the Appropriate Calculation of "Loss" for Purposes of Calculating Defendants' Advisory Guidelines Range (Doc. 175).

The United States indicted Defendants in a six-count Indictment alleging a scheme involving Defendants' use of a fraudulent shell company, Ergon Site Construction LLC ("Ergon"), to defraud various different governmental contract programs intended for disadvantaged business enterprises ("DBEs") under the State of Ohio's EDGE program. The United States alleged that

Defendants created and controlled Ergon to obtain a fraudulent DBE certification from the State of Ohio and then obtain public contracts from the City of Cincinnati and other governmental entities through Ergon.

Counts One and Two charge Evans Landscaping, Evans and Bailey with Conspiracy to Commit Wire Fraud in violation of 18 U.S.C. § 1349; Counts Three through Five charge Evans Landscaping, Evans and Bailey Wire Fraud in violation of 18 U.S.C. § 1343; and Count Six charges Evans and Bailey with Misprision of a Felony in violation of 18 U.S.C. § 4. Following a four-week trial, a jury convicted Defendants on all counts. However, this Court has granted Defendants' Motion for Judgment of Acquittal as to Misprision of a Felony in violation of 18 U.S.C. § 4 (Count Six). Therefore, Doug Evans and Bailey have been acquitted of misprision of a felony.

"'[D]istrict courts must begin their analysis with the Guidelines and remain cognizant of them throughout the sentencing process.'" *Rosales-Mireles v. United States*, 138 S. Ct. 1897, 1904, 201 L. Ed. 2d 376 (2018) (quoting *Peugh v. United States*, 569 U.S. 530, 541, 133 S.Ct. 2072, 186 L.Ed.2d 84 (2013)). "Courts are not bound by the Guidelines, but even in an advisory capacity the Guidelines serve as 'a meaningful benchmark' in the initial determination of a sentence and 'through the process of appellate review.'" *Id*. This Court has "the ultimate responsibility to ensure that the Guidelines range it considers is correct." *Id*.

The parties acknowledge that there is no specific provision in the sentencing guidelines for fraud involving governmental contract programs intended for DBEs—also referred to as "inclusion fraud." The parties agree that the applicable guideline is U.S.S.G. § 2B1.1. Under the "general rule" of Section 2B1.1, loss is "the greater of actual loss or intended loss." U.S.S.G. § 2B1.1 cmt. n.3(A). Actual loss is "the reasonably foreseeable pecuniary harm that resulted from the offense."

*Id*. cmt. n.3(A)(i). Intended loss is "the pecuniary harm that the defendant purposely sought to inflict." *Id*. cmt. n.3(A)(ii). Pecuniary harm "means harm that is monetary or that otherwise is readily measurable in money" and "does not include emotional distress, harm to reputation, or other non-economic harm." *Id*. cmt. n.3(A)(iii).

However, the parties do not agree as to whether a "special rule" within Section 2B1.1 applies. The Government argues that Application Note 3(F)(v) (the Regulatory Approval rule) or Application Note 3(F)(ii) (the Government Benefits rule) should apply. The Government calculates the loss to be the $1,970,667.23 that the City of Cincinnati paid to Ergon for the contracts that Ergon fraudulently obtained from the City; and the $880,067.73 for the demolition work Evans Landscaping fraudulently obtained through the State of Ohio's EDGE program. According the Government, the total loss amount is $2,850,734.96.

Defendants argue that this is not a theft of government benefits case, but is instead a case involving "procurement fraud." Defendants explain that there was no pecuniary harm to the governmental entities because Defendants rendered all the services under the contracts which Defendants were convicted of fraudulently obtaining. As a result, Defendants maintain that the "credit-against-loss rule," should apply because services were actually provided by Defendants in connection with the alleged fraud. Under this rule, "[l]oss shall be reduced by . . . the fair market value of the property returned and the services rendered, by the defendant or other persons acting jointly with the defendant, to the victim before the offense was detected." U.S.S.G. § 2B1.1, cmt. 3(E)(i). According to Defendants, the total loss amount is zero.

The Sixth Circuit has yet to address the proper calculation of loss for guidelines purposes in procurement fraud cases. The Fourth, Seventh, and Eleventh Circuits have applied the government benefits rule to calculate loss. *United States v. Bros. Construction Co. of Ohio*, 219

F.3d 300, 317-18 (4th Cir. 2000); *United States v. Leahy*, 464 F.3d 773, 789-790 (7th Cir. 2006); *United States v. Maxwell*, 579 F.3d 1282 (11th Cir. 2009); *see also United States v. Singh*, 195 F.Supp.3d 25, 33 n.4 (D.D.C. 2016) (applying government benefits rule but noting that "nothing precludes the defendant from requesting a downward departure in light of the circumstances presented here.").

However, other circuits which have addressed the issue have rejected the application of the government benefits rule. *See United States v. Nagle*, 803 F.3d 167, 183 (3d Cir. 2015) (concluding "in a DBE fraud case, regardless of which application note is used, the District Court should calculate the amount of loss under § 2B1.1 by taking the face value of the contracts and subtracting the fair market value of the services rendered under those contracts."); *United States v. Harris*, 821 F.3d 589, 604 (5th Cir. 2016) (acknowledging the circuit split but not being persuaded by the reasoning of the cases applying the government benefits rule to contracts awarded under affirmative action programs); *United States v. Martin*, 796 F.3d 1101, 1110 (9th Cir. 2015) (rejecting government benefits rule and instead applying the procurement fraud rule in U.S.S.G. § 2B1.1 cmt. n.3(A)(v)(II)); *see also United States v. Crummy*, 249 F. Supp. 3d 475, 483 (D.D.C. 2017) (concluding that both the general rule and the credits-against-loss provision apply to contracts awarded under the Small Business Administration's Section 8(a) program).

This Court concludes that the credits-against-loss provision in Section 2B1.1 Application Note 3(E)(i) applies to calculate the loss amount in Section 2B1.1(b)(1). This is not a case of overbidding, gorging profits, kickback payments to government officials, or even billing for services not rendered.[1] Instead, the jury determined that Defendants obtained contracts from the

---

[1] In fact, there was evidence at trial that the contracts were awarded on the basis of being the lowest bid.

two public entities through a fraudulent scheme. There was evidence at trial that services were performed as result of the contracts.[2]

In reaching this conclusion, the Court relies on the reasoning of the Fifth Circuit: "[t]he application notes to § 2B1.1 indicate that procurement frauds typically should be treated under the general loss calculation rule." *United States v. Harris*, 821 F.3d 589, 602–603 (5th Cir. 2016). The court noted that § 2B1.1 cmt. n.3(A)(v)(II) cites a fraud affecting a defense contract award as an example of a procurement fraud. *Id*. at 603. Yet, as examples of a government benefit, the application notes cite "grants, loans, entitlement program payments." *Id*. (quoting § 2B1.1 cmt. n. 3(F)(ii)). The court then explained:

> While a government contract awarded under an affirmative action program may be, in some sense, a "benefit" to the company awarded the contract, it does not share the common features of grants, loans, and entitlement program payments. Unlike the three enumerated examples, a contract award is not a unilateral transfer, but rather a bargained-for exchange for services rendered.

*Id*. Therefore, the court concluded that procurement frauds involving contracts should be treated under the general rule for loss calculation, not the government benefits rule. *Id*. at 605. However, the Court went on to explain that "[w]hen calculating loss for purposes of § 2B1.1(b)(1), Application Note 3(E) dictates that "[l]oss shall be reduced by ... the fair market value of the property returned and the services rendered, by the defendant or other persons acting jointly with the defendant, to the victim before the offense was detected." § 2B1.1 cmt. n.3(E)(i). Accordingly, the Court finds that Defendants' loss value is calculated under § 2B1.1 by subtracting the fair market value of the services rendered from the total contract price.

However, this does not end the consideration. As one district court has recently explained:

> No one denies that the procurement fraud that Crummy and his co-conspirators engaged in resulted in real harm to the government and to other potential recipients of the contracts at issue, nor do the Guidelines ignore that harm when they are

---

[2] The evidence is not clear whether all the contracts were fully performed.

properly construed. Rather, the Guidelines appropriately relegate this type of injury—i.e., the harm to the government's programmatic interests, which is undoubtedly non-pecuniary harm—to its appropriate classification, and various Guidelines provisions specifically prescribe methods to account for the nature and extent of such non-pecuniary harm.

*United States v. Crummy*, 249 F. Supp. 3d 475, 483–84 (D.D.C. 2017). This same court went on to explain:

> For example, in "cases in which the offense level determined under [section 2B1.1] substantially understates the seriousness of the offense[,]" because, inter alia, an offense "caused or risked substantial non-monetary harm[,]" the commentary to section 2B1.1 specifically notes that an upward departure may be warranted. U.S.S.G. § 2B1.1 cmt. n.20(A)(ii). Similarly, to the extent that the offense level does not reflect the full extent of the harm suffered, a court may depart on that basis alone, see id. § 5K2.0(a), and would be justified in so doing on the basis of factors that section 2B1.1 does not appear to take into account, such as the number of contracts the defendant fraudulently obtained, or the length of time during which the defendant participated in the scheme. *Cf. United States v. Nawaz*, 555 Fed.Appx. 19, 30 (2d Cir. 2014) (noting that the district court reduced the applicable Guidelines range in light of, inter alia, "the duration of [the defendant's] involvement in the conspiracy"). The Guidelines thus provide alternative mechanisms to account for much of the non-pecuniary harm that the government emphasizes, and unlike the government's insistence that the entire value of a fraudulently-obtained Section 8(a) contract is its loss, these alternative methods are consistent with the Commission's directive that the only loss considered under section 2B1.1(b)(1) is loss that "is monetary or that otherwise is readily measureable in money." U.S.S.G. § 2B1.1 cmt. n.3(A)(iii).

*Id*. at 484.

In conclusion, the author of the PSI should consider the above legal guidance, along with all other relevant sentencing factors outlined in the Guidelines.

**IT IS SO ORDERED**.

                                                         */s/ Michael R. Barrett*
                                                       Michael R. Barrett, Judge
                                                       United States District Court